IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRY COCHRAN,
    *Plaintiff*,

v.

DEPARTMENT OF HOMELAND
SECURITY (DHS),
FEDERAL EMERGENCY
MANAGEMENT AGENCY (FEMA)
    *Defendant*.

Civil Action No. ELH-18-201

**MEMORANDUM OPINION**

Terry Cochran, the self-represented plaintiff, sued her former employer, the United States Department of Homeland Security, Federal Emergency Management Agency ("FEMA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522(a). ECF 1 (the "Complaint").[1] In the suit, she seeks to obtain compliance with her FOIA request of December 4, 2017, requesting "all documents pertaining to her security clearance." ECF 1 at 5. According to plaintiff, FEMA did not satisfy the FOIA request, and therefore she also requests costs and legal fees associated with enforcement. ECF 1 at 6.[2]

FEMA has moved to dismiss or, in the alternative, for summary judgment (ECF 7), supported by a memorandum of law (ECF 7-1) (collectively, the "Motion") and exhibits. ECF 7-3 to ECF 7-7; ECF 8-1. FEMA contends that by March 1, 2018, it "provided Plaintiff with all

---

[1] Plaintiff has also filed two other FOIA suits against FEMA: *Cochran v. Department of Homeland Security, Federal Emergency Management Agency*, Case Nos. ELH-18-200 and ELH-18-202. Those FOIA actions are not resolved here.

[2] When plaintiff initially filed suit, she was pro se. *See* ECF 1. She then retained counsel, who assisted her, *inter alia*, in modifying her FOIA request. ECF 10. As of August 20, 2018, plaintiff is no longer represented by counsel. ECF 26.

documents responsive to her request." ECF 7-1 at 1. Therefore, FEMA maintains that the Complaint is now moot, and dismissal is required. ECF 7-1 at 5-7.

After FEMA filed the Motion, plaintiff retained counsel. And, on May 6, 2018, she submitted a modified FOIA request. In addition to what was previously sought on March 4, 2018, she requested the following: "(1) Plaintiff's emails with Patricia Sandlin, Human Resources Specialist, in January 2013; (2) Any and all emails stating her security clearance had been closed; (3) Any and all letters advising Plaintiff that her security clearance had been closed." ECF 17-2 at 4.

Plaintiff opposes the Motion (ECF 17), with exhibits (ECF 17-2). She asserts that "FEMA has produced no documents responsive to the third item" of her modified request. ECF 17 at 1.

FEMA has replied (ECF 22, the "Reply"), supported by numerous exhibits. ECF 22-2; ECF 23-1 to ECF 23-13. As to the third item of plaintiff's modified request, FEMA argues that "no additional records exist." ECF 22 at 4. Therefore, it contends that dismissal is appropriate.

No hearing is necessary to resolve this Motion. *See* Local Rule 105.6. For the reasons that follow, I shall construe FEMA's Motion (ECF 7) as one for summary judgment, and I shall grant it.

**I.    Factual Background**

Plaintiff was previously employed as the "Chief Freedom of Information Act (FOIA) Officer for the Department of Homeland Security, Federal Emergency Management Agency." ECF 17-2 at 6; ECF 17-2 (Affidavit of Plaintiff), ¶ 2. Her "area of expertise" was in the FOIA/Privacy Act "arena." *Id.*

On Sunday, June 12, 2016, Cochran sent an email to her supervisor, Eric Leckey, FEMA's Deputy Chief Administrative Officer, resigning from her position. ECF 17-2 at 6. A few days

later, on June 17, 2016, Leckey sent an email to FEMA employee Manuel de Guzman regarding Cochran's resignation and security clearance, stating, *id*.:

> An OCAO [Office of the Chief Adminsitrative Officer] employee, Terry Cochran, abruptly resigned on Sunday evening. Her resignation is below. I've been unsuccessful in getting her to return to check out, return her accountable property, get out briefed from her clearance, and return her badge. She was supposed to return to go through this process this morning at 9:30 a.m. but she was a no call/no show.
>
> I want to make sure her badge is deactivated and clearance is no longer active with FEMA. I'd appreciate your advice and counsel with the other stuff.

Cochran electronically submitted a FOIA request to FEMA on December 4, 2017, seeking "all documents pertaining to her security clearance." ECF 1 at 5. On December 5, 2017, FOIA Program Specialist Kevin W. Hill sent a letter to plaintiff (ECF 1-2), acknowledging receipt of her request and assigning a FEMA reference number, 2018-FEFO-00264. *Id*. at 2. The letter indicated that it is the agency's "goal to respond within 20 business days of receipt of [a] request." *Id*. However, FEMA "invoke[d] a 10-day extension" as to plaintiff's request, pursuant to 5 U.S.C. § 552(a)(6)(B), because her request would "require a thorough and wide-ranging search." ECF 1-2 at 2. Accordingly, the agency's response was due on or before January 18, 2018. *Id*.

Plaintiff filed suit on January 22, 2018, alleging that FEMA failed to provide the responsive documents by the deadline of January 18, 2018. ECF 1 at 5. On March 1, 2018, FEMA produced 19 pages of documents pertaining to plaintiff's security clearance. ECF 7-5 (FEMA final report); ECF 17-2, ¶ 3 (Cockran Affidavit); ECF 7-7 ("Neuschaefer Declaration"), ¶ 22; ECF 23-4. Aside from a few minor redactions, the records were released to plaintiff in their entirety. ECF 7-7, ¶ 22.

Upon receipt, plaintiff notified FEMA that she was unable to access the documents using the password provided by FEMA. *Id.* ¶ 23. Therefore, on March 8, 2018, FEMA mailed a CD to plaintiff containing the responsive records. *Id.*[3]

After FEMA filed its Motion, plaintiff submitted a list of documents responsive to her FOIA request that she claimed FEMA had failed to produce. ECF 17-2, ¶ 3. In an email of May 6, 2018 (ECF 17-2 at 4), plaintiff's counsel advised FEMA that it had failed to produce three sets of documents: "(1) Plaintiff's emails with Patricia Sandlin, Human Resources Specialist, in January 2013; (2) Any and all emails stating her security clearance had been closed; and (3) Any and all letters advising Plaintiff that her security clearance had been closed."

Pursuant to Cochran's modified request, FEMA performed additional searches. ECF 22-2 ("Neuschaefer Supplemental Declaration"), ¶ 23. Specifically, FEMA "retasked" the Office of the Chief Security Officer, and "tasked" the Office of Chief Component Human Capital Office ("OCCHCO") and the Office of the Chief Information Officer ("OCIO") with "conducting a search for responsive records." *Id.*; *see* ECF 23-6. Thirty-seven pages of documents were produced to plaintiff in June 2018. ECF 22-2, ¶¶ 26, 28, 29, 30. *See also* ECF 23-7; ECF 23-9; ECF 23-10; ECF 23-11. And, on June 29, 2018, FEMA advised plaintiff that no records exist as to Item 3. ECF 22-2, ¶ 34; ECF 23-13. This assertion followed verification provided by Anthony Clark,

---

[3] Eric Neuschaefer, Disclosure Branch Chief, Information Management Division, Office of the Chief Administrative Officer, submitted a Declaration on April 4, 2018 (ECF 7-7), explaining FEMA's FOIA process generally. *Id.* ¶¶ 4-11. In addition, he avers that FEMA provided plaintiff with "all documents responsive" to her FOIA request of December 4, 2017. *Id.* ¶¶ 12, 13. However, it appears that a portion of the Declaration pertains to a separate FOIA request made by plaintiff, seeking records as to the Family and Medical Leave Act, for which 96 documents were ultimately produced. *Id.* ¶¶ 14, 22.

Neuschaefer submitted a Supplemental Declaration on July 23, 2018. ECF 22-2. It is discussed, *infra*.

Supervisor, Federal Adjudication Branch, OCSC, to Ruthann Parise, Government Information Specialist, Disclosure Branch, Information Management Division, OCAO, representing that when a FEMA employee terminates employment, her security badge and her security clearance are deactivated. ECF 22-2, ¶ 33; ECF 23-12.

Additional facts are included in the Discussion.

## II.     Standard of Review

As noted, FEMA has moved to dismiss or, alternatively, for summary judgment. ECF 15. In support of the Motion, defendant contends: "Plaintiff's Complaint is now moot because FEMA has produced all documents responsive to Plaintiff's FOIA request." ECF 7-1 at 5.

FEMA is correct that a claim for relief is moot once an agency produces the requested information. *See*, *e.g.*, *Cornucopia Institute v. USDA*, 560 F.3d 673, 675 (7th Cir. 2009); *Shortall v. Baltimore Dist. U.S. Army Corps of Engineers*, Civil No. WMN-14-3904, 2015 WL 3545259, at *4 (D. Md. June 4, 2015) (stating that the controversy in the complaint that "'Defendants fail[ed] to produce documents' fell away when the Corps produced documents.").

However, I cannot conclude that FEMA has complied with FOIA merely because it says so. Therefore, I will address the Motion based on Fed. R. Civ. P. 56, because this will enable me to determine whether FEMA has complied with FOIA, as it alleges.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the

moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

The Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Nevertheless, a plaintiff must still present a genuine dispute of material fact to survive summary judgment. *See Bouchat*, 346 F.3d at 522.

### III. Discussion

### A.

Plaintiff maintains that FEMA has "failed to produce all responsive documents to her FOIA request." ECF 17 at 2. Specifically, she asserts that FEMA has not provided "any letters advising her that her security clearance had been closed," and that such letters "must have been generated pursuant to Federal Government policy." *Id.* FEMA has moved for summary judgment, claiming that "it released all of the records that it collected after conducting a reasonable search for responsive records." ECF 22 at 2.

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted), and to vindicate the public's right to know "what their government is up to." *U.S. Dep't of Justice v Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F. 3d. 1082, 1087-88 (D.C. Cir. 2014); *Havemann v. Colvin*, 537 Fed. App'x 142, 146 (4th Cir. 2013) (per curiam); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012); *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012); *Elliott v. U.S. Dep't of Agric.*, PJM-17-995, 2018 WL 3382907, at *3 (D. Md. July 11, 2018). Consistent with this objective, FOIA requires that "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

FOIA reflects "'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Dept. of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (citation omitted); *see United States Dept. of Defense v. Fed. Labor Rel. Auth.*, 510

U.S. 487, 494 (1994). Thus, the statute does not authorize "unfettered access to agency records." *Havemann*, 537 Fed. App'x at 146. Indeed, the "public's right to information [is] balanced against other competing interests. *Id.*

An agency responding to a FOIA request must conduct a search "'reasonably calculated to uncover all relevant documents'" and, if challenged, must demonstrate "'beyond material doubt'" that the search was reasonable. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *accord Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 254 (1st Cir. 2013) *cert. denied*, 571 U.S. 1146 (2014); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007).

Notably, "[t]he burden is on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993); *accord Moffat*, 716 F.3d at 254. However, the agency is not obligated to look beyond the four corners of the request or otherwise speculate about potential leads; rather, "[t]he adequacy of an agency's search is measured by a standard of reasonableness." *McGehee v. CIA*, 697 F.2d 1095, 1100-01 (D.C. Cir. 1983); *see Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996); *Goldner v. Soc. Sec. Admin*, 293 F. Supp. 3d 540, 545 (D. Md. 2017). "'The fact that there may *possibly* be additional documents . . . is not relevant to the question of whether defendant conducted an adequate search for the documents.'" *Goldner*, 293 F. Supp. 3d at 545 (quoting *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (ellipsis and emphasis added in *Goldner*).

The government may rely upon affidavits to show that it has conducted a reasonable search, as long as the affidavits are "'relatively detailed and nonconclusory and . . . submitted in good faith.'" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979) (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)); *accord Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 500 (11th Cir. 2011); *Elliott*, 596 F.3d at 852; *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008). The affidavit "must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1246-47 (4th Cir. 1994) (internal quotation marks and citations omitted); *accord Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009); *Lahr*, 569 F.3d at 986.

For example, the U.S. District Court for District of Columbia found a search by officials at the Shenandoah National Park ("SNP") to be reasonable when defendants submitted an affidavit that advised the court as follows:

> SNP employees searched agency records, both manually and by automated means. Specifically, defendant notified relevant employees of the requests through e-mail, discretionarily reopened plaintiff's first FOIA request though it had technically been closed, in order to sort out some perceived confusion, and requested that the [] project manager review his files in order to identify any documents covered by the requests. Both hard copy files and e-mails retrieved from the search were further reviewed by the SNP employees responsible for FOIA matters at SNP.

*Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 26 (D.D.C. 2003) (internal quotation marks omitted), *aff'd*, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004) (per curiam).

In contrast, the D.C. Circuit found an affidavit submitted by an FBI Special Agent inadequate when it merely stated, *Weisberg*, 627 F.2d at 370: "I have conducted a review of FBI files which would contain information that Mr. Weisberg has requested. . . . The FBI files to the

best of my knowledge do not include any information requested by Mr. Weisberg other than the information made available to him." The court explained, *id.*: "[T]he affidavit gives no detail as to the scope of the examination and thus is insufficient as a matter of law to establish its completeness."

If the agency shows that its search was reasonable, "the burden shifts to the requester to show that the search was not in fact in good faith" or that the agency is otherwise acting in bad faith (*e.g.*, by denying the existence of documents it in fact possesses). *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D. D.C. 1998); *see Moffatt*, 716 F.3d at 254; *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 341 (6th Cir. 2011); *Lee v. U.S. Attorney for S. Dist. of Fla.*, 289 F. App'x 377, 380 (11th Cir. 2008). "If the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

**B.**

To support FEMA's claim of compliance with the FOIA request, FEMA relies, *inter alia*, on the Supplemental Declaration of Eric Neuschaefer, the Disclosure Branch Chief, Information Management Division, in the OCAO. *See* ECF 22-2. Neuschaefer supervises FOIA requests for FEMA. *Id.* ¶ 3. In his Supplemental Declaration, Neuschaefer outlined FEMA's FOIA process, in general, and in detail. *Id.* ¶¶ 4-14. And, he set out the process that was followed in connection with plaintiff's FOIA request of December 4, 2017, as modified by her attorney on May 6, 2018. *Id.* ¶¶ 14-31.

As noted, in an email of May 6, 2018 (ECF 17-2 at 4), plaintiff's counsel expanded plaintiff's initial request to include: "(1) Plaintiff's emails with Patricia Sandlin, Human Resources Specialist, in January 2013; (2) Any and all emails stating her security clearance had been closed; (3) Any and all letters advising Plaintiff that her security clearance had been closed."

Neuschaefer avers, in relevant part, ECF 22-2:

> 16. FEMA received the FOIA request for all documents "pertaining to [Ms. Cochran's] security clearance" on December 5, 2017, and sent Plaintiff an acknowledgement letter on the same day.
>
> 17. On December 5, 2017, the Office of the Chief Security Officer (OCSO) was tasked to search for responsive documents. The OCSO searched electronic files stored in the Integrated Security Management System ("ISMS"). ISMS is an electronic database used to manage the suitability decisions and security clearance determinations of employees, contractors, detailees, and state & local partners. ISMS is searchable by name of the employee or former employee, and the OCSO searched the ISMS for responsive records using Ms. Cochran's name.
>
> 18. On December 5, 2017, the OCSO provided to the DB [*i.e.*, Disclosure Branch] 19 pages of security records, of which 19 pages were responsive documents. . . .
>
> 20. All documents were processed with line by line review. Two pages of records contained the social security number of a third party, which required redaction. The DB produced all responsive documents, 19 pages, to the Plaintiff on March 1, 2018, with redactions of a third party's social security number on two pages.
>
> 21. The DB produced all responsive documents, 19 pages, to the Plaintiff on March 1, 2018, with redactions of a third party's social security number on 2 pages.

(Alteration in original and internal citation omitted.)

In light of plaintiff's modified request of May 6, 2018, Neuschaefer directed OCSO, as well as OCCHCO and OCIO, to conduct another search. ECF 22-2, ¶ 23. In his Supplemental Declaration, Neuschaefer explains the searches subsequently conducted by FEMA, ECF 22-2:

> 24. The DB tasked OCCHCO to search for records in response to Ms. Cochran's modified search, because OCCHCO serves as FEMA's human resources division.
>
> 25. The DB also tasked OCIO in searching the emails of Patricia Sandlin during the timeframe specified.
>
> 26. On May 29, 2018, the OCSO provided to DB 17 pages of security records, of which 17 pages were responsive documents.

27. On May 30, 2018, the OCCHCO confirmed that no responsive records exist at OCCHCO. Specifically, OCCHCO's research staff determined that Ms. Cochran onboarded at the OCAO on February 10, 2013, prior to the maintenance of electronic employee files (e-files), which include security clearance documentation by OCAO. . . .

28. On June 5, 2018, the DB produced all additional responsive documents from OCSO, 17 pages, to the Plaintiff with no redactions. The documents produced in this release were additional records in response to the FOIA request. . . .

29. On June 5, 2018, the OCIO provided to DB 201 pages of emails and attachments, regarding Ms. Cochran's modified request for her "[e]mails with Patricia Sandlin," of which 20 pages were responsive. OCIO searched the DC2 Users Archive, which archives FEMA employees' email. OCIO searched the email mailbox of Patricia Sandlin using the terms "Terry Cochran" and "Terry Ann Cochran" from January 1, 2013 through February 28, 2013, to capture potentially responsive emails identified in Ms. Cochran's modified request. . . .

30. On June 6, 2018, the DB produced all responsive documents, 20 pages, with redactions of a third party's name and phone number on 1 page. . . .

Neuschaefer's Supplemental Declaration, coupled with the FEMA exhibits, establish FEMA's compliance with the FOIA in regard to the adequacy of the search itself. The exhibits describe the searches, identify search terms, the specific locations that were searched, and indicate that all files likely to contain responsive materials were searched. *See Ethyl Corp.*, 25 F.3d at 1246-47 ("In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed . . . but whether the agency has 'demonstrated that it has conducted a "search reasonably calculated to uncover all relevant documents."'") (citations omitted).

Moreover, in his Supplemental Declaration, Neuschaefer explains that it is the policy and practice of the OCSO that an employee's security clearance with FEMA is "not 'closed.'" ECF 22, ¶ 32. Rather, the employee's security badge and security clearance are "deactivated." *Id.* ¶ 33. Therefore, he avers, *id.* ¶ 34:

On June 29, 2018, the DB issued a final response to Ms. Cochran. The final response letter advised that no records exist with regards to item 3 of the modified FOIA request, namely "Any and all letters advising that her security clearance had been closed." (Exhibit 13)[.]

Accordingly, the burden shifts to plaintiff to show that the agency acted in bad faith or that the search was deficient. *See Greenberg*, 10 F. Supp. 2d at 13. Cochran contends that Leckey's email of June 17, 2016, demonstrates that her security clearance was closed. Therefore, she maintains: "FEMA must have at least one letter advising me that my security clearance had been closed." ECF 17-2, ¶ 6.

Plaintiff has failed to demonstrate that the documentation she seeks actually exists. She provided no support for her assertion that FEMA "must" have the document in its possession. "A mere deductive inference that a record 'must' exist, without proof, does not raise a material issue of fact regarding the adequacy of an agency's search." *Clearly, Gottlieb, Steen & Hamilton v. Dep't of Health,* 884 F. Supp. 770, 777 n.4 (D.D.C. 1993).

In light of the FOIA procedure and production outlined by Neuschaefer, as supported by FEMA's exhibits, the record demonstrates that FEMA has met its FOIA obligations here. *See Greenberg*, *supra*, 10 F. Supp. 2d at 13.

### IV. Conclusion

In sum, FEMA has satisfied its burden to "demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Krikorian, supra*, 984 F.2d at 468. And, plaintiff has "made no showing of [FEMA] bad faith sufficient to impugn [the Declaration and Supplemental Declaration], which on its face suffices to demonstrate that [FEMA's] search for responsive documents was complete." *Goland, supra*, 607 F.2d at 335.

To the extent plaintiff requests fees and costs associated with filing this action, I shall deny such a request. FOIA provides: "The court may assess against the United States reasonable

attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has *substantially prevailed*." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added). However, plaintiff has failed to show that she has "substantially prevailed" on her FOIA claim. *See Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir. 1999).

For these reasons, I shall grant summary judgment to FEMA. An Order follows, consistent with this Memorandum Opinion.


Date: March 5, 2019
/s/
Ellen Lipton Hollander
United States District Judge